## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-02456-SBP

T.D.T.,

     Plaintiff,

v.

MARTIN O'MALLEY, Commissioner of Social Security,[1]

     Defendant.

---

## OPINION AND ORDER

**Susan Prose, United States Magistrate Judge**

     This civil action arises under Title II, 42 U.S.C. § 401 *et seq.,* of the Social Security Act (the "Act"), for review of the Commissioner of Social Security's (the "Commissioner") final administrative decision denying Plaintiff's claim for disability insurance benefits ("DIB"). After consideration of the briefs and the record, this court affirms the Commissioner's decision for the reasons set forth in this Order.

### I. Background

     Plaintiff filed for DIB on October 29, 2019, initially claiming disability beginning

---

[1] Martin O'Malley is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). An action under 42 U.S.C. § 405(g) survives regardless of any change in the person occupying the office of the Commissioner of Social Security.

October 29, 2017. ECF No. 6-2 at 10.[2] Following a hearing on her claim, Plaintiff amended her alleged disability onset date to September 28, 2020. *Id.*; ECF No. 6-4 at 215.

Plaintiff's disability claim was denied in a decision dated December 8, 2021. ECF No. 6-2 at 10-23. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, *id.* at 1-6, thereby rendering the ALJ's December 8, 2021 decision final and subject to judicial review. Jurisdiction is proper under 42 U.S.C. § 405(g).

## II. The ALJ Decision

In her December 8, 2021 decision, the ALJ first found that Plaintiff had a date last insured of December 31, 2020 and therefore focused her analysis primarily on the three-month period from September 28, 2020, Plaintiff's amended alleged disability onset date, through December 31, 2020. ECF No. 6-2 at 10 & 13. The ALJ then applied the five-step sequential process outlined in 20 C.F.R. §§ 404.1520(a) and 416.920(a).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from September 28, 2020, through December 31, 2020. ECF No. 11-2 at 13. At step two, the ALJ found that Plaintiff had severe impairments of "arthrodesis of the cervical spine; cervical fusion; radiculopathy; chronic pain syndrome; bilateral carpal tunnel syndrome; and obesity" *Id.* The ALJ also found that Plaintiff had medically determinable impairments of anxiety and

---

[2] When citing to the Administrative Record, the court utilizes the docket number assigned by the court's Case Management/Electronic Case Files ("CM/ECF") system and the page number associated with the Administrative Record, found in the bottom right-hand corner of the page. For all other documents, the court cites to the document and page number generated by the CM/ECF system.

depression but that these impairments did not cause more than minimal limitations in Plaintiff's

ability to perform basic mental work activities and were therefore non-severe. *Id.*

At step three, the ALJ concluded that Plaintiff did not have an impairment or a

combination of impairments that met or medically equaled one of the listed impairments in the

disability regulations. *Id.* at 14. The ALJ next determined that Plaintiff had the residual

functional capacity ("RFC") to perform "light" work as defined in 20 C.F.R. §§ 404.1567(b),

except that Plaintiff was limited to:

> lifting 20 pounds occasionally and 10 pounds frequently; standing, walking, or
> sitting each for six hours out of an eight-hour workday with normal work breaks;
> frequently climbing ramps and stairs; frequently balancing, kneeling, or crouching;
> occasionally crawling; no work on ladders, ropes, or scaffolds; no work at
> unprotected heights or with fast moving machinery; only occasionally, not
> frequently, side to side movement of the head; frequently, not constantly, reaching
> overhead bilaterally; and only brief, incidental exposure to extremes of cold.

*Id.* at 15.

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work in

a composite job that combined the duties of a retail manager and a cashier stock clerk. *Id.* at 20-

1. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and

RFC, there were jobs existing in significant numbers in the national economy that Plaintiff could

have performed, such as mail clerk, non-postal; photocopy machine operator; and office helper.

*Id.* at 21-2. The ALJ therefore concluded that Plaintiff had not been under a disability from her

alleged amended disability onset date of September 28, 2020, through December 31, 2020. *Id.* at

22.

### III. Standard of Review

In reviewing the Commissioner's decision, this court "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014). "The phrase 'substantial evidence' is a 'term of art,' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (quoting *T-Mobile South, LLC v. Roswell*, 574 U.S. 293, 301 (2015)). In applying the substantial-evidence standard,

> a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contacts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Id.* (cleaned up). *See also Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) ("Substantial evidence requires more than a scintilla but less than a preponderance.") (quoting *U.S. Cellular Tel., L.L.C., v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003)). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Zoltanski*, 372 F.3d at 1200 (quoting *U.S. Cellular*, 340 F.3d at 1133).

This court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Knight*, 756 F.3d at 1175 (citation omitted). *See also Zoltanski*, 372 F.3d at 1200 (the court may not displace the Commissioner's choice between two fairly conflicting views, even if

4

the court would have made a different choice if the matter had been before it de novo).

## IV. Analysis

Plaintiff argues that the ALJ erred (1) by failing to consider all of Plaintiff's medically determinable impairments in assessing her RFC; (2) by finding that Plaintiff was able to work on a sustained basis; and (3) by finding at step five that there were jobs Plaintiff could have performed during the relevant time period.

### A. The ALJ's Consideration of Plaintiff's Impairments

Plaintiff first argues that the ALJ erred in concluding that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently as required for "light" work because the ALJ failed to consider her impairments of an umbilical hernia and asthma. This court disagrees.

"[A]n ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination," and "the failure to consider all of the impairments is reversible error." *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). A medically determinable impairment "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521.

In support of her argument that the ALJ was required to address her hernia, Plaintiff cites a single medical record from an "encounter for medical examination to establish care" with Daniel Kupersmit, DO, on February 25, 2020. ECF No. 6-7 at 393-400. Dr. Kupersmit's physical exam revealed a distended abdomen; "generalized abdominal tenderness (mild generalized tenderness, mild-moderate in suprapubic region) and tenderness in the suprapubic area;" and "a hernia . . . present in the umbilical area." *Id*. at 396. Dr. Kupersmit referred Plaintiff to a

specialist in gastroenterology. *Id*. at 393-4. Plaintiff cites no other evidence to show that she ever saw a specialist or otherwise received medical treatment for her hernia. In addition, subsequent medical records from Dr. Kupersmit closer in time to the period of alleged disability make no reference to any abdominal issues suffered by Plaintiff. *Id*. at 417-19 & 427-30. *See also id.* at 408 (consultative examiner noting that plaintiff complained of no GI symptoms and had "[s]oft and nontender" abdomen at August 13, 2020 examination).

With respect to her alleged asthma, Plaintiff cites listings of her medications in reports from medical appointments in May 2018, March 2019, and August 2020, that include Flovent and Albuterol. *Id*. at 381, 384 & 417. Beyond listing these medications, however, there is no discussion or mention of Plaintiff's asthma in any of these reports. This is also true with respect to the approximately fifty pages of comprehensive prescription records from Walgreens for the period of October of 2017 through July of 2021 that Plaintiff generally cites to support an impairment of asthma. ECF No. 6-6 at 311-359. Many of these medication records are also irrelevant to determining Plaintiff's disability status from September through December of 2020. *See* 20 C.F.R § 404.1512(b) ("[W]e will develop your complete medical history for at least the 12-month period prior to the month you were last insured for disability insurance benefits.").

This scant objective medical evidence fails to support Plaintiff's assertion that her hernia and asthma constituted medically determinable impairments during the relevant three-month period that the ALJ was required to consider in assessing Plaintiff's RFC. *Cf. Salazar,* 468 F.3d at 621 (rejecting the Commissioner's argument that the ALJ did not need to consider claimant's borderline personality disorder where references to this impairment included thorough

examinations and appeared repeatedly and consistently throughout the record). *See also* 20

C.F.R. § 404.1521 ("We will not use your statement of symptoms, a diagnosis, or a medical

opinion to establish the existence of an impairment(s).").

Moreover, even if these conditions could be deemed medically determinable

impairments, the lack of supporting evidence establishes that any error by the ALJ in failing to

consider them was harmless because there is no basis to conclude that further analysis of these

alleged impairments would result in additional limitations in Plaintiff's RFC. *See Keyes-Zachary*

*v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012) ("There is no reason to believe that a further

analysis . . . could advance [plaintiff's] claim of disability" so "[t]he alleged error is harmless.").

Plaintiff also asserts, with no development or analysis, that the ALJ improperly

substituted her opinion for that of Stephen Creer, MD, that Plaintiff could only lift and carry 10

pounds occasionally. This contention is not properly before this court. *See id.* at 1161 ("We will

consider and discuss only those of [plaintiff's] contentions . . . that have been adequately briefed

for our review."). In any event, to the extent Plaintiff argues that the ALJ's assessment of her

exertional limitations was in error due to her hernia and asthma, along with Dr. Creer's opinion,

this argument is without merit in view of this court's preceding analysis of these alleged

impairments.

## B. The ALJ's Finding that Plaintiff Was Able to Work on a Sustained Basis

Plaintiff argues that the ALJ's finding that she could work on a sustained basis[3] was in

---

[3] Plaintiff notably does not dispute in this section of her Opening Brief the ALJ's finding
that there was work she could perform, but rather argues that the ALJ erred in finding that she

error due to the ALJ's failure to properly evaluate Plaintiff's subjective statements regarding her symptoms. This court disagrees.

In evaluating the intensity and persistence of a claimant's symptoms, including pain, an ALJ must consider all available evidence, including the claimant's medical history and statements, and determine the extent to which the claimant's alleged limitations are consistent with both the medical and non-medical evidence. 20 C.F.R. § 404.1529(a). In addition, "[c]redibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Hackett v. Barnhart,* 395 F.3d 1168, 1173 (10th Cir. 2005).

Plaintiff first argues that the ALJ did not properly analyze Plaintiff's subjective statements about her activities of daily living ("ADLs"). In support of this argument, Plaintiff cites two findings by the ALJ regarding her ADLs but fails to provide citations to the record of purportedly contradictory evidence. Regardless, the ALJ's finding that Plaintiff washes laundry is not inconsistent with Plaintiff's assertion that she needs help finishing and folding the laundry because of pain. The ALJ's finding that Plaintiff drives is likewise not inconsistent with Plaintiff's assertion that there were times she could not drive due to pain and difficulty turning her head. Plaintiff also does not challenge the ALJ's other findings that Plaintiff tends to her personal care needs, prepares meals, shops, handles her finances, cares for minor children, engages in activities with her family, and is able to follow written instructions. ECF No. 6-2 at

---

could perform this work on a regular and continuing basis. ECF No. 8 ("Opening Brief") at 3-6.

16. Plaintiff's argument that the ALJ did not properly analyze her subjective statements about her ADLs is therefore without merit.

Plaintiff next argues that the ALJ misread the record and provides a single example where the ALJ stated that Plaintiff "was recommended *against* surgical intervention for her neck" in August of 2020. *Id*. at 17 (emphasis in original). Plaintiff asserts that the referenced recommendation against surgery was in fact her "subjectively reported, and mistaken, recollection." It is unclear whether Plaintiff's recollection was mistaken. ECF No. 6-7 at 379 (report from surgical consult in May of 2018 reflecting that Brian Witwer, MD, advised Plaintiff that she "would benefit from a 3 level anterior cervical discectomy fusion," but also discussing conservative treatment options, including weight loss, physical therapy, and epidural spinal injections, and noting a plan to see Plaintiff again in a few months to discuss further options).

In any event, based partly on this purported misstatement, Plaintiff further argues that the ALJ's conclusion that "there [was] no evidence that [Plaintiff's] physical condition worsened prior to her last date insured and she was able to control her pain and symptoms with conservative treatment," ECF No. 6-2 at 18, was "based on [the ALJ's] misreading of the medical record, is not reasonable, and lacks substantial support." Opening Brief at 4. As further support for this argument, Plaintiff cites her appointment on December 29, 2020, with Adam Peter Smith, MD. ECF No. 6-7 at 585-90. At this appointment just before her last insured date of December 31, 2020, Dr. Smith discussed a surgical option with Plaintiff and noted that physical therapy and injections had failed to relieve her pain. *Id*. at 586.

At a prior appointment on August 20, 2020, however, Dr. Smith noted that Plaintiff was

recommended weight loss, injections, and physical therapy in 2018 but "did not pursue conservative care." *Id*. at 420-21. Plaintiff does not cite any documentation in the record of any injections or physical therapy she received during her alleged period of disability from September 28, 2020, through December 31, 2022. Plaintiff also fails to rebut the ALJ's finding that prescription medications helped with her pain. *See id.* at 473 (7/22/2020 treatment note that Gabapentin helped with Plaintiff's pain but caused swelling) & 457 (11/06/2020 treatment note that Plaintiff had "ongoing neck pain with alleviation by daily Flexeril" and that Plaintiff requested refills of Flexeril "as this works best for her pain"). Under the deferential standard of review applicable to this appeal, *see Biestek*, 587 U.S. at 107, this court finds that Plaintiff has failed to demonstrate that the ALJ's finding that her condition had not worsened during her alleged period of disability and was managed with conservative care was in error.

Next, Plaintiff faults the ALJ for failing to address how the "known" side effects of her medications would impact her ability to work on a continuing and sustained basis. As evidence that she experienced such side effects, Plaintiff cites her hearing testimony that she can't "think straight" and a function report wherein she self-reported experiencing dizziness, drowsiness, loss of memory, constipation, stomach problems, and fatigue from her medications. ECF Nos. 6-2 at 47 & 6-6 at 255. The ALJ, however, reasonably discounted Plaintiff's credibility regarding her symptoms based on her ADLs and normal status report findings. ECF No. 6-2 at 16 & 19. *See also* ECF No. 6-7 at 397, 419 & 430 (psychiatric exam findings that Plaintiff was attentive and communicative with normal thought content).

Plaintiff also fails to cite any authority regarding any common side effects generally

caused by her medications or any evidence in the record that she ever reported any medication side effects to her treatment providers.[4] *Cf. Kirby v. Astrue*, 568 F.Supp.2d 1225, 1232-33 (D. Colo. 2008) (ALJ improperly failed to consider the side effects of plaintiff's medications where the medical record was "replete with discussion of these side effects"). Again then, this court finds no error in the ALJ's alleged failure to expressly consider how Plaintiff's alleged medication side effects impacted her ability to work.

Lastly, Plaintiff argues that the ALJ erred in failing to account for (1) her non-severe psychological impairments of depression and anxiety in her assessment of Plaintiff's physical limitations[5] and (2) any effect that that her chronic pain syndrome may have on her ability to concentrate or react. These arguments are limited in scope and easily rejected given Plaintiff's failure to provide any citation to the record that would support additional restrictions on these grounds.

## C. The ALJ's Step-Five Finding that Plaintiff Was Capable of Performing Other Jobs

Plaintiff challenges the ALJ's finding that she was capable of working as a mail clerk, non-postal; photocopy machine operator; and office helper, on the basis that this finding incorrectly assumes that Plaintiff had no limitations in handling, fingering, and feeling during the

---

[4] This court has already found that there was minimal medical evidence that Plaintiff suffered from abdominal issues of any kind, Opinion and Order at 5, let alone abdominal issues relating to any prescribed medications.

[5] Plaintiff does not argue that her non-severe psychological impairments warranted mental limitations in her RFC.

applicable time period. In essence then, Plaintiff challenges the ALJ's RFC finding that she had no manipulative limitations.

To show that the ALJ erred by not including any manipulative limitations in her RFC, Plaintiff cites evidence in the record to show that she suffered from weakness, muscle atrophy, reduced hand and grip strength, numbness, sensory change, and pain in her hands. The cited portions of the record demonstrate that Plaintiff experienced these symptoms to some degree at times. *See, e.g.*, ECF No. 6-7 at 430 (8/19/2020 exam note that "[w]eakness and atrophy (minimal comparing L to R arm) is present"); 583 (1/6/2021 exam note that Plaintiff had motor weakness and tingling in both hands with left hand grip 4-/5 with otherwise 4+/5 strength bilaterally); & 589 (12/29/2020 exam note that Plaintiff had "[s]ubjective numbness [and bilateral] nondermatomal arms").

The Commissioner counters, however, that the record demonstrates only slightly diminished hand and grip strength and exams routinely showing normal range of motion and sensation. In particular, the Commissioner cites the August 13, 2020 consultative examination findings of Dr. Creer, that Plaintiff performed "very well" on fine manipulation testing with normal range of motion in her wrists and fingers, +4 motor strength bilaterally, and normal sensation that warranted no manipulative limitations. *Id*. at 407-09.

This court is satisfied that substantial evidence supports the ALJ's finding that Plaintiff had no manipulative limitations. The court is also satisfied that the ALJ applied the correct legal standard in relying on the jobs identified by the vocational expert in response to a hypothetical that included all of the limitations the ALJ assessed for Plaintiff, but without any manipulative

limitations. *See* ECF No. 6-2 at 57-58. *See also Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) ("The ALJ was not required to accept the answer to a hypothetical question that included limitations claimed by plaintiff but not accepted by the ALJ as supported by the record.").

## V. Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED that the Commissioner's decision is AFFIRMED. Judgment shall enter accordingly.

Dated: June 28, 2024

BY THE COURT:

_____
Susan Prose
United States Magistrate Judge